**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00212-NYW-SKC

ALFRED P. REAUD,

      Plaintiff(s),

v.

FACEBOOK, INC., a Delaware corporation.

      Defendant(s).

---

**PLAINTIFF'S RESUBMITTED RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE OR,
ALTERNATIVELY, TO TRANSFER VENUE [19] PERSUANT TO MINUTE ORDER
[24]**

---

**Table of Contents** …………………………………………………………………… 1

**Reaud is Self-Represented** ……………………………………………………….. 3

**Factual Background** ……………………………………………………………….... 3

**Legal Standard** ……………………………………………………………………… 5

**Argument** ……………………………………………………………………………... 5

        I. THIS COURT SHOULD NOT DISMISS PLAINTIFF'S COMPLAINT ………. 5

            a. "Pornographic" for the purposes of this Reply. ……………………… 5

            A. Section 230 of the Communications Decency Act Does Not Bar 6
            Plaintiff's Claims if Defendant is a Content Co-Creator.

                1. Content, the Advertisement and the Third Party. …………. 6

                    i. Medley Home "Third Party" …………………………. 6

                    ii. A&A Cosmetics "Third Party" ………………………. 7

                2. Section 230(c) Inapplicable if Facebook Co-Creates the 7
                Content.

                3. Pornography Online. ……………….…………………….. 9

            B. The Complaint States Cognizable Claims Against Facebook. …… 10

                1. Plaintiff does state a valid claim for sexual harassment. … 10

                2. Plaintiff states a valid claim for IIED. ……………………... 12

        II: COLORADO IS THE PROPER VENUE FOR THIS ACTION. ……………… 14

            A. Consent To Forum Selection Clause Revoked. …………………… 13

            B. Is Nexus Of Claim Activity In Colorado Or California? …………… 14

            C. Thoughts on "The Bremen" and Forum Selection. ……………….. 15

        III: NOR IS DISMISSAL WITH PREJUDICE IN THE INTERESTS OF 16
        JUSTICE.

            A. Will These Pornographic Ads Continue if Court Dismisses Action? 17

**CONCLUSION** ………………………………………………………………………...   18

PLAINTIFF Alfred P. Reaud (Reaud) respectfully resubmits this Response ("Response") in Opposition to Defendant's Motion To Dismiss Plaintiff's Complaint With Prejudice Or, Alternatively, To Transfer Venue [19][1] ("Motion to Dismiss"), pursuant to the Minute Order [24] of this Court.

## REAUD IS SELF-REPRESENTED

To assuage the Court's concerns, Reaud avers he self-represents in every aspect of this action, from initial Complaint to this resubmitted Response. Reaud has operated pro se since at least the 1990's, and he uses all research tools available to him, including GPT-4[2] and Google Scholar[3]. Reaud has no human advisors, nor ghostwriters human or artificial. Reaud, though, is a quick leaner. Reaud avers no portion of his pleadings, motions, or responses were generated other than through his own reason and research, and his contemporaneous record indicates 58.8 hours consumed generating his Response prior to resubmittal. Reaud tries to do the best with the tools he has, though he is not always at his best and as shown, is fallible. Reaud apologizes to the Court for the Court's wasted time.

## FACTUAL BACKGROUND

Reaud is a Colorado resident since 1979. Reaud has used Facebook since 2009, though he did lapse his account several years. He became an active Facebook user again in 2015.

---

[1] Reaud uses the convention [19] to indicate the docket number of the filing, corresponding to Facebook's ECF designation. Reaud use the abbreviation Ex. for Exhibit.
[2] https://openai.com/research/gpt-4, starting mid-April 2023 and subscribing starting 4/28/2023.
[3] https://scholar.google.com/

In December 2021, Reaud started getting crude sexualized advertisements ("ad(s)"), including the occasional pornographic ad. Reaud reported those ads via the methods provided by Facebook, and Facebook replied via the method Facebook usually does, a small window with words to the effect "Ad Reported We won't show you this ad again."[4],[5] This continued and in September 2022, Facebook started the pornographic advertisements the subject of his Complaint.

Reaud attempted to bring this to the attention of Facebook by every method Facebook provides, relying mostly on the "Make Facebook better" and "Report a problem" links. Reaud did so because Facebook does show reported ads, as above, repeatedly regardless of what Facebook's small window says[6]. December 16, 2023 Reaud posted screen capture of Facebook's advertisements as documented herein[7], and Facebook's content moderation algorithm promptly banned Reaud. Reaud did so to document for Facebook, using their own content moderation algorithm, that the ads violate Facebook Community Standards. Facebook banned Reaud at least 8 times by March 19, 2023 for posting screen captures of ads served by Facebook. Through those bans, Reaud contacted Facebook, again by several methods available to a user,

---

[4] All images referenced in this Response are contained in the conventionally filed flash drive [2], titled "Exhibit 1 and 2". The images are sorted by year into three folders, with an extra folder titled "FB Sponsor Sec Issues" for other sponsored advertisement section activity captures, and a Screenshot Document Index in Microsoft Excel format. The screen capture application Reaud uses, Screenshot, sets the filename of an image on image capture with the current date and time at the time of capture. The Screenshot application is one of several screen capture applications available on the PC operating system Ubuntu 22.04 under the Gnome Desktop. The title "Exhibit 1 and 2" is in error. Complaint *Ex. 2* [3-1] is the exemplars.
[5] I.e. Complaint *Ex. 1* [2], "/FB Sponsor Sec Issues/Screenshot from 2021-12-18 12-04-36.png"
[6] I.e. the sequence of captures in Complaint *Ex. 1* [2], "/FB Sponsor Sec Issues/Screenshot from 2021-12-18 12-03-56.png" then to "/FB Sponsor Sec Issues/Screenshot from 2021-12-18 12-04-36.png" then to "/FB Sponsor Sec Issues/Screenshot from 2021-12-19 07-49-59.png"
[7] Complaint *Ex. 1* [2] "/2022/Screenshot from 2022-12-16 21-15-29.png"

including appealing to the Facebook Oversight Board, to show Facebook that their advertisements are pornographic.

The ads continued until Reaud filed his Motion for Preliminary Injunction Enjoining Defendant From Serving Pornographic Ads to Plaintiff [8] ("Motion for PI") on March 21, 2023.

Reaud has notified Facebook, through counsel, that he rejects the Terms of Service due to the outrageous acts of Facebook, specifically with respect to accepting California as a venue, and the reasons why, further developed below. Reaud has also notified Facebook, again via counsel, that "Facebook is a private business. It can shut down the account at its convenience if it wants to." As of the date of this filing, Facebook has not done so.

## LEGAL STANDARD

Reaud agrees with the legal standards contained in Facebook's Motion to Dismiss [19] *at 3*, except for the statement stating "Per the parties' agreement, California law governs each of Plaintiff's claims. See Pricer Decl., Ex. B, Terms of Service at 15." Reaud contests that statement, and argues that Colorado law governs each of Reaud's claims for the reasons developed below.

## ARGUMENT

I. **THIS COURT SHOULD NOT DISMISS PLAINTIFF'S COMPLAINT.**

a. **"Pornographic" for the purposes of this Response.**

"Pornographic" is a word of subjective meaning, that is subject to interpretation by the user of the word depending on culture, upbringing, religion, etc. The meaning

that a speaker or writer of the word "pornography" or "pornographic" indented may not correspond to the interpretation of one whom hears or reads the word. Therefore, Reaud clarifies the meaning of the word "pornographic" to mean any content referenced in Reaud's Complaint or Response that, if Reaud posted such content, the posting would violate Facebook Community Standards as tendered by Reaud in his Complaint *Ex. 3* [3-2][8], sections 1, 2, 3[9].

**A.    Section 230 of the Communications Decency Act Does Not Bar Plaintiff's Claims if Defendant is a Content Co-Creator.**

Reaud can show circumstantially that Facebook is an active content co-creator. Reaud agrees that Facebook is an interactive computer service provider under the provision of 47 U.S.C. § 230(f)(2). Reaud, however, contests Facebook's application of the other two pertinent requirements for immunity under § 230(c) to apply, that the claimed content is third party, i.e. provided by "another information content provider", § 230(c)(1); or that Facebook has restricted anything in the context of Reaud's Complaint, § 230(c)(2).

**1.    Content, the Advertisement and the Third Party.**

**i.    Medley Home "Third Party"**

---

[8] Facebook's Declaration of Jennifer Pricer in Support of Defendant's Motion to Dismiss Plaintiff's Complaint With Prejudice or Alternatively, To Transfer Venue [19-1] ("Declaration"), Ex. C, pages 27 to 34, shows a short form version of the Facebook Community Standards. The full Facebook community standard is in Reaud's Complaint *Ex. 3* [3-2], as of January 12, 2023.

[9] §3 and §4 of Facebook's Community Standards, Complaint *Ex. 3* [3-2] grants leave for exceptions in cases of certain categories of content, including advertisements. However, as Reaud shows in his Complaint *Ex. 2* [3-1] *Exemplar 1 page 2*, that juxtaposition is disgusting and disturbing in the eyes of Reaud, and he would argue in the eyes of an average viewer. In Complaint *Ex. 2* [3-1] *Exemplar 2 page 3*, an erection is shown in an ad, which would pass muster under §4.a, except for the fellatio being performed, §3.a, b (contact is directly visible). Complaint *Ex. 2* [3-1] *Exemplar 3 page 4* shows a foreground of erections against a background of uncensored sex, §1.a, b, §2.a, b.

A recent pornographic ad is Response *Ex. 1 Figure 1*, contained in the flash drive conventionally filed with Reaud's Complaint as *Ex. 1* [2]. Reaud refers to this advertisement as "Medley Home". It shows a pornographic ad for penis enlargement. The ad takes viewers to https://medleyhome.com in their browser, Response *Ex. 1 Figure 3 and 4*. This third party is not selling anything remotely related to penis enlargement. This ad is a repeat from an earlier advertisement by the same alleged third party, Response *Ex. 1 Figure 2*, with the difference only being the pornographic imagery. Reaud contacted this "third party" via email using the contact information provided on the Medley website, and the alleged third party did not reply.

### ii.      A&A Cosmetics "Third Party"

An older example with the <u>very same imagery</u> as Medley's ad, above, is Response *Ex. 2 Figures 1 and 2*. Reaud refers to this advertisement as "A&A Cosmetics". This ad takes viewers to https://evoqueusa.com in one's browser, A&A Cosmetics, in Anaheim, California, *Ex. 2, Figures 3 and 4*. Reaud attempted to contact this "third party", A&A Cosmetics via phone at (714) 213-4608, with no reply as of the time of this filing. This third party is not selling anything remotely related to penis enlargement.

### 2.      Section 230(c) Inapplicable if Facebook Co-Creates the Content.

One can do the above analysis on every image that Reaud has claimed as pornographic in his Complaint. Reaud has a plausible reason why this kind of pornographic content appears in Reaud's Facebook feed. It starts from age and

relationship status. It ends with a need Facebook has. Reaud is a ~ 65-year-old retiree, who is single. Facebook has that knowledge. Facebook envisions that Reaud might be experiencing erectile dysfunction, and is lonely. What better way to attract female companionship than to grow a fourteen-inch penis with an erection that lasts for two hours on a little blue pill advertised on Facebook? Facebook has been more than happy to show Reaud images that violate Facebook Community Standards to prove the efficacy of the advertised "product".

Why? Because Facebook has a need for ad clicks. Facebook does not care how those clicks generate. Reaud has discovered that Facebook is surrounding a likely low performing advertisement link, i.e. a link to boutique cosmetics, with clickbait graphic and text, intending for a viewer to click on a fake "ad" that has nothing to do with the product one is taken to in their browser. Facebook is doing so because it wants to modify ad statistics to show Facebook is a good advertising platform for the advertising user, even though the ad is underperforming due to lack of consumer interest in the product. Facebook also generates revenue from ad clicks and ad views.

If Facebook is modifying advertisement content by introducing text and imagery to increase the ad's click statistics, or for other reasons unknown to Reaud, then Facebook is a co-creator of the advertising content. Facebook then becomes a "information content provider" under § 230(f)(3). In *Fair Housing Council of San Fernando Valley v. Roommates.com*, LLC, 521 F.3d 1157 (9th Cir. 2008), the Appeals Court for the 9th Circuit reversed a district court holding that the defendant was immune under § 230(c), in which the Appeals Court held:

"A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.[8][10]" *id at 1162,1163.*

Within the context of Reaud's claim, however, Reaud believes his case is more similar in nature to *Anthony v. Yahoo! Inc.,* 421 F.Supp.2d 1257 (N.D.Cal.2006) with respect to § 230(c). The difference is that in Reaud's case Facebook created, co-created or significantly modifies advertising content rather than created profiles, for similar reasons as Yahoo! Inc., i.e. pecuniary gain.

### 3. Pornography Online.

In 1997, the US Supreme Court took the view that looking at pornography on the internet is not accidental. In speaking of the availability of sexual material online, Justice Stevens notes:

"Though such material is widely available, users seldom encounter such content accidentally. "A document's title or a description of the document will usually appear before the document itself . . . and in many cases the user will receive detailed information about a site's content before he or she need take the step to access the document. Almost all sexually explicit images are preceded by warnings as to the content." [15][11] For that reason, the "odds are slim" that a user would enter a sexually explicit site by accident.[16][12]" *Reno v. ACLU* 521 U.S. 844 (1997) *at 854.*

Reaud has found that to be the case in his decades online, except in the context of his claim against Facebook since September 2022. Facebook made it impossible for Reaud to get away from sexually explicit images while using the platform, continually

---

[10] Endnote to opinion: "[8] See, e.g., Anthony v. Yahoo! Inc., 421 F.Supp.2d 1257, 1262-63 (N.D.Cal.2006) (Yahoo! is not immune under the CDA for allegedly creating fake profiles on its own dating website)."
[11] Opinion endnote: "[15] Id., at 844-845 (finding 88)."
[12] Opinion endnote: "[16] Ibid."

serving them[13] whenever Reaud interacted with the Facebook platform. The pornographic advertisements would appear without warning, change without warning, and disappear without warning.

If, as discovered by Reaud above, the interactive computer service provider is co-creating the content, i.e. if Facebook made substantial enough changes to the original advertisement content that it qualifies as new and distinct advertising content, then the information is NOT being provided by another information content provider and § 230(c)(1) can't lie with Facebook. Creation or co-creation of content occurs when one takes an ad for custom handcrafted furniture, as example, and converts it to a pornographic ad that advertises penis enlargement pills.

With respect to CDA § 230(c)(2), Facebook took no actions to restrict access to or availability of material that Reaud, considers to be "objectionable". Facebook continued to serve those objectionable advertisements until Reaud filed his Motion for Preliminary Injunction [8]. Further § 230(c)(2) protects Facebook against liability for "any action voluntarily taken in good faith to restrict access to or availability of material". Rather, Reaud claims Facebook did the exact opposite, co-created and served the very content that Reaud found objectionable.

###### B.  The Complaint States Cognizable Claims Against Facebook.

###### 1.  Plaintiff does state a valid claim for sexual harassment.

---

[13] Reaud research indicates that client side (browser) scripts that cue on mouse motion, sometimes accompanied by timer activity, trigger requests for ads. I.e. mouse motion would trigger a request for an ad, but that further mouse motion would not trigger an ad until a period had elapsed. That period varied from 15 seconds to minutes. Ads appeared not to trigger unless the mouse moved.

"Sexual" is an adjective, and in sense 2[14] of its Merriam-Webster definition, it has the meaning "having or involving sex". As used in the context of Reaud's Claim, "Sexual" modifies the noun "harassment" to make it easier to understand the type of harassment that is occurring. If Reaud claimed "harassment" such would not be barred under either Colorado or California law, and should not be barred for using an adjective.

"Harassment" locates under Colorado Revised Statute (C.R.S.) 18-9-111, a criminal code statute. Specifically, in the context of Reaud's claim, C.R.S. 18.9.111(1)(e) states as follows:

"Directly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner intended to harass or threaten bodily injury or property damage, or makes any comment, request, suggestion, or proposal by telephone, computer, computer network, computer system, or other interactive electronic medium that is obscene; or". (Emphasis added)

One can reasonably say that the pornographic advertisements Reaud claims sexually harass him are visually obscene requests or suggestions, by an alleged "third party", to buy a product whose intended use is to enhance his possibly lacking sexual prowess. Regardless of where the ad takes you, Facebook counts on the sexual suggestiveness to get you to click, not on the product you ultimately get linked to.

The State of California also has a "harassment" statute, California Penal Code (Cal. Penal Code) § 653.2 which defines harassment at (c):

"(c) For purposes of this section, the following terms apply:
(1) "Harassment" means a knowing and willful course of conduct directed at a specific person that a reasonable person would consider as seriously alarming,

---

[14] Definitions and grammar context from Merriam-Webster Dictionary iPhone App, Version 5.6.7

seriously annoying, seriously tormenting, or seriously terrorizing the person and that
serves no legitimate purpose.
        (2) "Of a harassing nature" means of a nature that a reasonable person would
consider as seriously alarming, seriously annoying, seriously tormenting, or seriously
terrorizing of the person and that serves no legitimate purpose." (Emphasis added)

        Reaud argues that by the very nature and volume of these pornographic

advertisements received by Reaud, this conduct by Facebook is both "seriously

annoying" and "seriously tormenting". More so in light of what Reaud is doing at the time

Reaud receives these ads, checking on friends and interests, not looking for

pornography, and the fact that Reaud has reported the ads repeatedly to Facebook, as

evidenced in his Complaint *Ex. 4* [3-3].

## 2.    Plaintiff states a valid claim for IIED.

        Intentional infliction of emotional distress requires the following criteria in

Colorado:

"46 of the Restatement (Second) of Torts (1965):

    § 46. Outrageous Conduct Causing Severe Emotional Distress
    (1) One who by extreme and outrageous conduct intentionally or recklessly causes
severe emotional distress to another is subject to liability for such emotional distress,
and if bodily harm to the other results from it, for such bodily harm.
The elements of liability for the tort of extreme and outrageous conduct are that:
    1. [t]he defendant engaged in extreme and outrageous conduct;
    2. [t]he defendant engaged in the conduct recklessly or with the intent of causing the
plaintiff severe emotional distress[;] and
    3. [t]he plaintiff incurred severe emotional distress which was caused by the
defendant's conduct.
CJI-Civ.3d 23:1. Proof of accompanying physical injury is not required. Rugg v.
McCarty, 173 Colo. 170, 476 P.2d 753", *Culpepper v. Pearl Street Bldg., Inc.*, 877 P. 2d
877 (Colo: Supreme Court, 1994) *at 882*.

        Reaud argues that he has gone beyond mere threadbare allegations. Reaud has

shown a pattern of activity on the part of Facebook that is extreme and outrageous, as

evidenced by the ninety-three ads Reaud has claimed sexually harass him, Complaint *Attachment 1* [1-2]. The pornographic advertisements documented in Reaud's Complaint are just the ads Reaud has been able to capture. Given the probable reason why Reaud gets these ads, developed above, which is to increase click counts on underperforming ads and/or generate profit for Facebook, these ads increase in their outrageousness to Reaud.

Reaud argues Facebook shows reckless disregard to any possible injury it may cause to Reaud, continuing to show these advertisements to Reaud, irrespective of the sixty-three documented times Reaud reported such ads to Facebook, Complaint *Ex. 4* [3-3]. Also irrespective of the fact that they violate Facebook's own Community Standards, and continuing until the time Reaud filed his Motion for PI [8].

**II:**     <u>**COLORADO IS THE PROPER VENUE FOR THIS ACTION.**</u>

    **A.**     **Consent To Forum Selection Clause Revoked.**

On March 20, 2023, during conference with Facebook counsel via email before filing his Motion for PI [8], Reaud specifically revoked consent to the forum selection clause of Facebook's Terms of Service ("TOS"), and expressed the reasons why. Reaud did so when counsel for Facebook bought it up.

Reaud notified Facebook, again via counsel on February 13, 2023, discussing Reaud's use of the Facebook content moderation algorithm and possible penalties that Facebook could enforce, that "Facebook is a private business. It can shut down the account at its convenience if it wants to." However, Facebook has left the account open

and Reaud uses it as he has previously. See Facebook's Declaration *Ex. A* [19-1][15]

*page 6* §14; *Ex. B* [19-1] *page 22* § 4 §§ 2..

Finally, Facebook's states in Declaration *Ex. B, page 21* TOS §4 §§1, Facebooks

states "… if you do not agree to our updated Terms and no longer want to be part of the

Facebook community, you can <u>delete</u> your account at any time." (*<u>Emphasis in original</u>*)

As a victim of alleged sexual harassment from Facebook, Reaud does not consent to

"delete his account", as that would not be in the interests of justice, would not be

appropriate, and would send the wrong signal about what Reaud claims.

### B.    Is Nexus Of Claim Activity In Colorado Or California?

28 U.S.C. § 1391(b) states:

> "Venue in General.—A civil action may be brought in—
> …
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of
> the action is situated; or
> …"

All the events in Reaud's claim occur within the boundaries of the State of

Colorado, where the Federal District Court for the District of Colorado is located. Reaud

avers that the following applies in determining whether 28 U.S.C. § 1391(b)(2) is

applicable:

1. All of Reaud's claims result from Facebook serving pornographic ads to Reaud's

computers at his residence in Loveland, Colorado.

---

[15] In Facebook Declaration [19-1] references, Reaud uses the filing page number as opposed to the Exhibit page number, as some of the included exhibits in [19-1] are unpaged.

2. The pornographic ads served by Facebook to Reaud are served from a Facebook server that resides at a location within 20 kilometers of the geographical center of Denver, Colorado as identified by the Maxmind geolocation database application[16], referenced in Reaud's Complaint *Ex. 5* [3-4] *page 4*.

3. Facebook has a massive online business presence in Colorado, collects Colorado tax, and sells products that do not leave the confines of the State of Colorado.

Further, in *Atlantic Marine Const. v. US Dist. Court,* 571 US 49 (2013) *at 573* the Court specifically held that the chosen venue is proper if: (Emphasis applied)

"Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. Title 28 U.S.C. § 1391, which governs venue generally, states that "[e]xcept as otherwise provided by law ... this section shall govern the venue of all civil actions brought in" federal district courts. § 1391(a)(1). It then defines districts in which venue is proper. See § 1391(b). If a case falls within one of § 1391(b)'s districts, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties' contract contains a forum-selection clause has no bearing on whether a case falls into one of the specified districts."

## C.      Thoughts on "The Bremen" and Forum Selection.

Change of venue would be improper if Reaud can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), *at 15*.

Reaud argues that the forum selection clause contained in Facebook's TOS is unreasonable and unjust. Reaud contends the clause places an undue burden on

---

[16] Maxmind, https://www.maxmind.com, is a software development company with products in fraud prevention and geolocation from IP addresses. They are located at 51 Pleasant Street #1020, Malden, MA 02148 and their phone number is +1 (617) 500-4493. On Ubuntu 22.04, Reaud's primary operating system, the application installs from the "geoip-bin" package.

Reaud, requiring him to litigate in a distant, inconvenient location that has no connection to the activity that Reaud claims is his Complaint. A transfer of venue out of the State of Colorado would risk Reaud's ability to prosecute this action, as he is unable to leave the Colorado due to working as an apartment manager to maintain his residence, and cannot afford to travel to California being on a fixed income.

Due to the internet, cell phones, and Zoom not available at the time of "The Bremen" neither jurisdiction favors a party other than in State and/or local laws. One can reasonably argue, however, that Colorado's harassment statute[17] is a strong statement of public policy in Colorado, and that such a statute protects Reaud further than the corresponding California harassment statute[18]. Colorado's harassment statute protects Reaud specifically from the torts of Facebook, as claimed by Reaud. If a forum selection clause in a civil contract requires Reaud to litigate in a jurisdiction where the enforcement of the clause would undermine or contravene the strong public policy represented by a criminal harassment statute in Reaud's state of residence, Reaud asserts that he has a valid showing that enforcement of the clause is against the interests of justice under the principles established in "The Bremen". "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.", *Id. at 15.*

## III:   NOR IS DISMISSAL WITH PREJUDICE IN THE INTERESTS OF JUSTICE.

---

[17] C.R.S. 18.9.111(1)(e), above, *at 11*.
[18] Cal. Penal Code § 653.2, above, *at 11,12*.

FRCP does not require full specificity in a claim, or an allegation of every possible fact, or an allegation of facts unknown to plaintiff at the time. Rather Rule 8(a) requires, paraphrasing, a "showing of jurisdiction, a short and plain statement of the claim and a demand for relief". Further Reaud has the right to motion this Court for leave to amend and supplement his complaint to correct deficiencies under FRCP 15(2).

Reaud was not cognizant of other torts, which he discovered while composing this Response, when he filed his Complaint and following Motion for PI. Reaud during the whole time he has been complaining to Facebook about their advertisements, going back to August 2021, thought that Facebook was just trying to get Reaud to buy ridiculous erectile dysfunction and penis enlargement products that Reaud has absolutely no interest in purchasing. As example, Reaud sees evidence of what he believes is violation of the Lanham Act's false advertising provisions, 15 U.S.C. § 1125(a), something he was unaware of. Reaud also believes several other torts could amend the complaint under FRCP Rule 15.

### A.    Will These Pornographic Ads Continue if Court Dismisses Action?

Facebook does not intend to stop the pornographic ads, and will start the pornographic ads again the minute the Court's gaze is away. Reaud received ad Response *Ex. 3 Figures 1 and 2* on April 22, 2023 at 6:15PM, which shows the reason why Reaud argues as he does. Reaud has contacted the ad's third party via phone and email.

The vendor is real, Response *Ex. 3 Figures 6 and 7*; however, the rest of the ad appears fabricated. The sponsor, "Zumba Sophia'", Response *Ex. 3 Figures 3-5*, appears to be a Zumba coach, indicates one ad, appearing April 22, 2023, posted to Reaud's feed in less than 24 hours.

Reaud's contention about this specific advertisement and Facebook's future intent is its personal significance, in that the censoring object is one of the creatures Facebook knows Reaud adores from his platform activity, cats, Response *Ex. 3 Figure 2*. The Court will not find a previous image of that nature in Complaint *Ex.1* [2]. Facebook would like us to believe the third party or sponsor created the advertisement. However, this third party, "Ace Golf Cart Covers", when contacted via email about this advertisement, replied via "Jason", and stated:

"This IS NOT an ad for our website. Unfortunately, anyone with an ad account can create an ad and link that ad to any company they wish. But again, I stress that this certainly is not an ad which is any way associated with our company nor our Facebook content. …", Response *Ex. 3 page 4*.

Who profits here? Reaud can only conjecture as to how Zumba Sophia' could profit. If someone clicks on that ad for whatever reason, a counter increments, an advertisement view and/or click charge generates, a statistic is improved, and <u>Facebook</u> profits, profit notwithstanding community standards or injury to Reaud.

## <u>CONCLUSION</u>

For the forgoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion To Dismiss Plaintiff's Complaint With Prejudice Or, Alternatively, To Transfer Venue [19], and further requests that this Court proceed to trial of Plaintiff's Complaint in the Federal District Court for the District of Colorado.

Dated this 5th day of May 2023,

_(signature)_

**_Alfred P. Reaud, pro se_**
365 N Lincoln Avenue
Loveland, CO 80537-5654
Telephone: (970) 541-9950.
E-mail: al@alreaud.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May 2023, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE OR, ALTERNATIVELY, TO TRANSFER VENUE [19]** was e-filed with the Clerk of Court via CM/ECF System, which will send notification of such filing to:

Michelle Visser
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
mvisser@orrick.com

Emily L. Wasserman
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: 303.892.9400
emily.wasserman@dgslaw.com

Jennifer S. Allen
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: 303.892.9400
jennifer.allen@dgslaw.com