**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00212-NYW-SKC

ALFRED P. REAUD,

    Plaintiff,

v.

FACEBOOK, INC.,

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE OR, ALTERNATIVELY, TO TRANSFER VENUE**

---

## TABLE OF CONTENTS

Page

**INTRODUCTION** ................................................................................................................................ 1

**ARGUMENT** ..................................................................................................................................... 2

I. THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE. ................................................................................................................ 2

    A. California Law Governs Each of Plaintiff's Claims. .............................................. 2

    B. The Complaint Fails to State Any Claim Against Meta. ........................................ 2

        1. Plaintiff fails to state a claim for sexual harassment .................................. 2

        2. Plaintiff fails to state a claim for intentional infliction of emotional distress ................................................................................................... 3

    C. Section 230 of the Communications Decency Act Independently Bars Plaintiff's` Claims. ............................................................................................... 4

    D. Plaintiffs Should Not Be Granted Leave to Amend ............................................... 6

II. THE COURT ALTERNATIVELY SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA. .................................................................. 7

    A. The Forum Selection Clause Applies and Encompasses Plaintiff's Claims. .......... 7

    B. Enforcement of the Clause Would Not be Unreasonable. ..................................... 8

**CONCLUSION** ............................................................................................................................. 10

## **INTRODUCTION**

Plaintiff's Response in Opposition to Meta's Motion to Dismiss or Alternatively Transfer Venue ("Mot. or "Motion") does not meaningfully address the numerous deficiencies with Plaintiff's Complaint that Meta identified in its Motion. Instead, Plaintiff introduces new flawed theories and purported evidence that cannot be considered on a motion to dismiss and that could not salvage his claims even if they could be considered. In so doing, Plaintiff only underscores why his Complaint fails to assert a single viable claim for relief and why it should be dismissed without leave to amend.

Regarding his sexual harassment claim, Plaintiff does not dispute (1) that there is no cause of action for "sexual harassment" under California law—which governs Plaintiff's claims; or (2) that he does not (nor could he) allege that Meta violated any sexual harassment statute. Plaintiff instead purports to invoke criminal harassment statutes from both California and Colorado, neither of which contain a private right of action. His argument fails.

Regarding his intentional infliction of emotional distress ("IIED") claim, Plaintiff doubles down on his flawed and conclusory allegations. He does not, however, cite any legal authority for any of his positions or address the legal authority set forth in Meta's Motion, which shows that Plaintiff's IIED claim fails for three independent reasons. *See* Mot. at 5-7.

Moreover, both of Plaintiff's claims are subject to dismissal for the independent reason that they are barred by Section 230 of the Communications Decency Act. Plaintiff tries to evade Section 230 by introducing new evidence and theorizing that Meta "co-created" the purported pornographic content at issue to help generate revenue. This hypothesis is unsupported.

As for Meta's alternative argument that the Court should transfer the action to the U.S. District Court for the Northern District of California, Plaintiff does not dispute that the parties' contract contained an enforceable forum selection clause. Nor does he dispute that the Terms of Service governs the parties' relationship. Instead, he claims that he "revoked" his acceptance of

the clause—*after filing his lawsuit*—thus making California an improper venue.  He does not, however, cite any legal authority for his position and none exists.

## ARGUMENT

### I.   THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE.

#### A.   California Law Governs Each of Plaintiff's Claims.

As set forth in Meta's Motion, California law governs Plaintiff's claims.  *See* Mot. at 3.  Plaintiff "argues that Colorado law governs each of [his] claims for the reasons developed below" (Resp. at 5), but the remainder of his Response does not develop any such reasons.[1]  The Court, accordingly, should enforce the governing law provision in the parties' agreement.

#### B.   The Complaint Fails to State Any Claim Against Meta.

##### 1.   Plaintiff fails to state a claim for sexual harassment.

Plaintiff's Response does not dispute that there is no common law cause of action for "sexual harassment" and that he has not alleged a violation of a sexual harassment statute.  *See* Mot. at 4; Resp. at 10; *Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1426 (2007) ("there is no common law cause of action for sexual harassment.").  He instead attempts to amend his complaint through his Response[2] to invoke two general criminal harassment statutes—Colorado Revised Statute (C.R.S.) 18-9-11 and California Penal Code § 653.2.  Even if Plaintiff's claim was for general harassment—and it is not—neither criminal statute contains a private right of action for Plaintiff to enforce.  *Aymar v. Stassinos*, 2008 WL 4838232 (E.D. Cal.

---

[1] Plaintiff claims that he specifically "revoked consent" to the forum selection clause, not to the governing law clause or any other provision of the Terms of Service.  Resp. at 13.

[2] Plaintiff "may not amend his complaint through his response to a motion to dismiss."  *Licerio v. Lamb*, 2021 WL 4556092, at *22 (D. Colo. July 15, 2021); *see also Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (plaintiff may not attempt to "rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss."); *see, e.g.*, *Mattson v. Napolitano*, 2010 WL 11553697, at *2 (D. Colo. Sept. 15, 2010) (finding that plaintiff may not amend complaint by including new factual allegations in response to motion to dismiss).

Oct.7, 2008) (noting Cal. Penal Code § 653.2 does not provide a private right of action); *Weeks v. Claussen*, 2016 WL 10644768, at *7 (D. Colo. Oct. 31, 2016) (dismissing an attempted claim under Colo. Rev. Stat. § 18-9-111(1)(h) because it does not contain a private right of action). Accordingly, Plaintiff's claim for "sexual harassment" fails, and he should not be permitted to file an amended complaint with a general harassment claim.

### 2. Plaintiff fails to state a claim for intentional infliction of emotional distress.

As set forth in Meta's Motion (Mot. at 4-7), the Complaint fails to sufficiently allege that Meta's actions constitute extreme or outrageous conduct, that Meta acted with the intent of causing emotional distress to Plaintiff, or that Plaintiff suffered severe emotional distress.[3]

Plaintiff does not dispute—and thus concedes—that he has failed to allege severe emotion distress sufficient to support his IIED claim. *See* Mot. at 7; Resp. at 12-13. The Court's inquiry, accordingly, can end there. Plaintiff's thin attempts to resolve his IIED claim's other deficiencies, in any event, also fail.

*First*, Plaintiff claims that he has shown a "pattern of activity on the part of Facebook that is extreme and outrageous," particularly because Meta allegedly served him the ads to "increase click counts on underperforming ads." Resp. at 13. However, Plaintiff's Response ignores that to be considered "extreme and outrageous," conduct must "exceed all bounds of that usually tolerated in a civilized community." *Batuhan*, 2016 WL 1055107, at *4. As Meta's Motion establishes, this is a very high bar. Mot. at 5. Plaintiff does not address the cases in Meta's Motion showing that even conduct which would be considered "highly offensive" and "inappropriate" does not rise to the level of "extreme and outrageous" conduct to support an IIED claim. *See id.* Nor does he cite any cases suggesting that the "pattern of activity" he

---

[3] While California law applies, Plaintiff acknowledges that each of these elements is also required under Colorado law, such that a failure to allege any of them would also result in dismissal if Colorado law applied.

alleges here might possibly suffice. As shown in Meta's Motion, it does not.

*Second*, Plaintiff *still* does not allege sufficient facts establishing that Meta acted with an intent to injure him—or even with a realization that he would be injured—as is required to sustain an IIED claim. *See* Mot. at 6. Indeed, Plaintiff walks away from the conclusory accusation in his Complaint that Meta "intentionally injur[ed]" him and asserts for the first time in his Response that Meta acted with "reckless disregard to any possible injury it may cause to Reaud" by purportedly continuing to "serve" him the advertisements on Facebook. Resp. at 13. Plaintiff's Complaint does not, however, plead any facts to support this new allegation—which cannot be considered on a motion to dismiss. Moreover, acting with reckless disregard to the *possibility of injury* is not sufficient to support an IIED claim. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 906 (1991) (defendant must act with "substantial certainty" that severe emotional injury will occur).

Accordingly, Plaintiff's claim for intentional infliction of emotional distress should be dismissed with prejudice.[4]

### C. Section 230 of the Communications Decency Act Independently Bars Plaintiff's` Claims.

Plaintiff agrees that Meta is an interactive computer service provider, Resp. at 6, and he does not dispute that his claims seek to treat Meta as the publisher or speaker of the content at issue. *Id.* The only element of Section 230(c)(1)[5] that he asserts is not present here is the requirement that the content at issue be provided by another content provider. To argue that, Plaintiff goes beyond the allegations in his Complaint to theorize that Meta "co-created" the

---

[4] Plaintiff does not dispute—and thus concedes—that his allegations regarding Meta purportedly "blocking" him from Facebook are insufficient to state an IIED claim. *See* Mot. at 6-7; Resp. at 12-13.
[5] Plaintiff also "contests" that "Facebook has restricted anything in the context of Reaud's Complaint." Resp. at 6, 10. In so arguing, Plaintiff misunderstands Meta's Section 230 defense. Meta has only invoked Section 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Meta has not argued for purposes of this Motion that Section 230(c)(2) applies.

allegedly pornographic content—by altering various benign advertisements and incorporating pornographic clickbait graphic and text—to "modify ad statistics" for its own financial gain. Resp. at 7-8.  Therefore, according to Plaintiff, Section 230 does not apply.  *Id.*  Plaintiff's wholly unsupported theory is—in a word—preposterous.

As an initial matter, Plaintiff's attempt to introduce new evidence with his Response is improper and should be ignored.  To bolster his flawed theory, Plaintiff attaches multiple exhibits to his Response, which purport to show additional pornographic advertisements and the related third-party website content.  *See* Resp., Exs. 1-3.  Plaintiff alleges that there are discrepancies between the purported pornographic advertisements and the non-controversial underlying products being sold.  Resp. at 7.  But in ruling on a 12(b)(6) motion, courts may only consider "the complaint itself, [] attached exhibits, and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  Conversely, the Court "may *not* consider new allegations contained in a plaintiff's response." *Warad West, LLC v. Sorin CRM USA Inc.*, 119 F.Supp.3d 1294 (D. Colo. 2015) (emphasis added) (dismissing plaintiff's claim and rejecting new allegations made in response).  As such, the Court may not consider Plaintiff's new evidence and related allegations.

But even if the Court could consider Plaintiff's new evidence— and it cannot—the evidence does not support Plaintiff's flawed theory that *Meta* is responsible for the alleged discrepancies.  For example, Exhibit 3 shows that Plaintiff contacted a representative from Ace Golf Cart Covers on April 24, 2023 to inquire about an alleged pornographic advertisement he purportedly saw on Facebook.  The Ace Golf Cart representative responded that "*anyone with an ad account* can create an ad and link that ad to any company they wish."  Ex. 3 at 4 (emphasis added).  Thus, even putting aside the flawed logic of Plaintiff's theory—the new evidence does not support Plaintiff's hypothesis that *Meta* altered the advertisements—in fact, it only helps establish that *anyone with an ad account* could have done so.

As for the allegations that the Court *can* consider here, in his Complaint, Plaintiff merely alleged that Meta was involved in the advertisements by "serv[ing]" them.  *See, e.g.*, Compl. at 5.  But a service provider does not lose Section 230 protection for merely "serving" content created by a third-party.  To the contrary, this type of conduct falls at the heart of Section 230 protection.  *See* Mot. at 9; *see also Cohen v. Facebook, Inc*., 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017) (Section 230 "is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications"); *Leavitt v. Yelp!, Inc.,* 2011 WL 5079526, at *9 (N.D. Cal. Oct. 26, 2011) *aff'd*, 765 F.3d 1123 (9th Cir. 2014) (finding claims that defendant "created negative reviews" and "manipulated third party reviews to pressure businesses to advertise" were still barred by Section 230 where plaintiff did not further allege how defendant materially contributed to the content at issue).  Accordingly, as explained in Meta's Motion, the advertisements at issue were provided by another content provider (Mot. at 9), and all three of Section 230(c)(1)'s requirements are met (Mot. at 8-10).[6]

### D. Plaintiffs Should Not Be Granted Leave to Amend.

Here, leave to amend would be inappropriate for two reasons. *First*, as established in Meta's Motion and above (*see* Section I. *supra*), Plaintiff has failed to allege sufficient facts to state any claim and has also failed to propose any additional facts or legal theories that might support an argument that an amended pleading would not also be subject to dismissal. *Bradley v. Val-Megias*, 379 F.3d 892, 901 (10th Cir. 2004) (amendment is futile when an amended complaint would also be subject to dismissal).  Plaintiff's vague assertion that he *may have* a claim for "other torts" or that a Lanham Act violation *may have* occurred (Resp. at 17) does

---

[6] Plaintiff's Response does not dispute, and thus concedes, that to the extent his IIED claim is based on Meta purportedly "blocking" him from Facebook, Section 230 applies and independently bars his claim. *See* Mot. at 9-10.

nothing to change that result.

*Second*, all of Plaintiff's claims will be barred by Section 230(c)(1) no matter what additional facts (or new causes of action) he pleads (*see* Section I.C. *supra*)—which is why courts generally deny leave to amend when Section 230 applies to bar claims, which cannot be "circumvent[ed]" with "creative pleading."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016).[7]

## II.     THE COURT ALTERNATIVELY SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA.

As established in Meta's Motion, the Court should dismiss Plaintiff's claims in the interest of justice and judicial economy, rather than waste another court's limited resources by transferring the action.  *See Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) ("[A] court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed.").  But if the Court decides not to exercise its discretion to dismiss the claims outright, it should transfer this action to the Northern District of California under 28 U.S.C. § 1404 and per the forum selection clause in the Terms of Service—which applies here— and let that court rule on Meta's Motion.

### A.     The Forum Selection Clause Applies and Encompasses Plaintiff's Claims.

Plaintiff does not dispute that the forum selection clause is valid and encompasses his claims.  Instead, he resorts to the confounding argument that he "revoked" his consent to the forum selection clause on March 20, 2023—*after filing his lawsuit*—and, accordingly, the clause no longer applies.  Even if he actually had attempted such revocation as he now argues,[8] Plaintiff

---

[7] Plaintiff requests that the Court deny Meta's Motion because he believes that "Facebook does not intend to stop the pornographic ads, and will start the pornographic ads again the minute the Court's gaze is away."  Resp. at 17.   This is not a proper basis for denying a motion to dismiss.  In any event, the Court has already denied Plaintiff's preliminary injunction, which seeks this exact relief.  ECF No. 21.
[8] Plaintiff did not "specifically revoke[] consent to the forum selection clause in Facebook's Terms of Service" in a March 20, 2023 email to undersigned counsel, as he contends in his Response.  Resp. at 18.

does not provide any legal authority for proposition that he could revoke an applicable agreement's forum selection clause *after* filing his lawsuit.  And there is none.   Indeed, if Plaintiff was permitted to "revoke consent" to the forum selection clause simply because he decided to file in a different forum, the clause would have no practical effect.  *Turlock Irrigation Dist. v. Fed. Energy Reg.* Commission, 903 F.3d 862, 872 (9th Cir. 2018) (court will not adopt interpretation to render provision meaningless).  Here, moreover, Plaintiff *continued* to use Facebook after he purportedly revoked his consent (Resp. at 17 (discussing Plaintiff's Facebook use on April 22, 2023)—and such use constitutes his *continued* agreement to be bound by *all of the provisions* in the Terms of Service, including the forum selection clause.  Pricer Decl. Ex. B, Terms of Service at 12 (noting that continued use of Meta's products binds users to the Terms).

Thus, as explained in Meta's Motion (Mot. at 11), the forum selection clause at issue, which provides that any dispute "shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County," by its plain terms establishes mandatory jurisdiction in the specified forums.  Pricer Decl., Ex. B, Terms of Service at 15 (emphasis added); *see, e.g., Hayes v. Facebook*, 2019 WL 8275335, at *3 (D. Colo. Mar. 6, 2019) (granting motion to transfer to the Northern District of California based on mandatory forum selection clause in the Facebook Terms of Service).  Moreover, Plaintiff does not dispute that the forum selection clause encompasses his claims, which "arise[ ] out of" his "access or use of [a] Meta Product[ ]"—namely, Facebook.  Pricer Decl., Ex. B, Terms of Service at 15.

### B.     Enforcement of the Clause Would Not be Unreasonable.

As the primary case Plaintiff relies on makes clear, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be

---

In that email, Plaintiff refused to voluntarily transfer the action to the Northern District of California and stated that he had "allege[d] that Facebook breached the Terms of Service itself, making those terms null and void." *See* Visser Decl. at Ex. A.  Here, Plaintiff does not argue—nor could he—that the forum selection clause does not apply based on an alleged breach of contract.

unreasonable under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Accordingly, the "proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Tex.*, 134 S. Ct. 568, 579 (2013).  This is not an exceptional case.

Plaintiff argues that requiring him to litigate in a "distant, inconvenient location" would be an "undue burden." Resp. at 17.  However, Plaintiff's arguments regarding the inconvenience of litigating in the Northern District of California—including his arguments related to travel—are irrelevant *as a matter of law*.  As the Supreme Court has instructed, where, as here, a forum-selection clause is valid and applicable, a court "should not consider arguments about the parties' private interests," *Atl. Marine Constr. Co*, 571 U.S. at 64, including any contentions "[]related to the convenience of the parties," *id.* at 52.  Indeed, where "parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Bowers v. Tension Int'l, Inc.*, 2016 WL 3181312, at *1 (D. Colo. June 8, 2016) (noting that even if it would be "much easier for Plaintiff to pursue claims" in Colorado, such factors are not considered "where the parties have a contractual provision designating another forum.").  Accordingly, even if Plaintiff's convenience objections had merit as a matter of fact, his arguments are beside the point as a matter of law.

Moreover, Plaintiff completely ignores all the reasons set forth in Meta's Motion why the *public* interest factors here weigh in favor of enforcing the parties' agreed-to forum selection clause.  Crucially, as explained in Meta's Motion, protecting parties' "legitimate expectations" (*id.*) is important "for businesses with nationwide customers[,] to limit the risk and expenses of litigation under different laws in every state." *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010); *see also* Mot. at 14-15.  Plaintiff provides no argument to the contrary.  Further, as noted in Meta's Motion (Mot. at 14), Meta has experienced no

"administrative difficulties," *Atl. Marine Constr. Co*., 571 U.S. at 62 n.6, in resolving disputes in the Northern District of California, and the courts of the Northern District of California have considerable experience handling lawsuits against companies like Meta.  Mot. at 15.  And contrary to Plaintiff's claim that *all events* at issue occurred in Colorado (Resp. at 14), to the extent "local interest[s]" are even at play, *id*., this case has significant ties to California—Meta is headquartered in and principally operates out of San Mateo, California.  Plaintiff also asserts that the case should proceed in Colorado because Colorado's harassment statute is more favorable to him than California's.  Resp. at 16.  But this argument confuses governing law with proper forum.  As set forth above (*see* Section I.A, *supra*), no matter where this case is litigated, California law will apply.[9]  The public interest factors, accordingly, weigh in favor of enforcing the forum selection clause.

## CONCLUSION

For the foregoing reasons and those set forth in Meta's Motion, Meta respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.  In the alternative, the Court should transfer this case to the Northern District of California as the parties agreed.

Dated: May 18, 2023

---

[9] As explained above (*see* Section I.B, *supra*), moreover, the two criminal statutes cited by Reaud—which are not for *sexual* harassment—do not provide him with a private right of action to bring such claims against Meta.

- 10 -

Respectfully submitted,


By: */s/ Michelle Visser*
By Its Attorneys

Michelle Visser, Bar No. 277509
mvisser@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5518

Emily L. Wasserman
emily.wasserman@dgslaw.com
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Telephone:     +1 303 892 7339

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2023, a true and correct copy of the foregoing **DEFENDANT'S REPLY ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE OR, ALTERNATIVELY, TO TRANSFER VENUE** was e-filed with the Clerk of Court via CM/ECF System which will send notification of such filing to:

Alfred P. Reaud (pro se e-filer)
365 North Lincoln Avenue
Suite 21
Loveland, CO 80537
alreaud@gmail.com

_/s/ Christine J. Flores_
Christine J. Flores